United States v. Ray Ms. Christensen Good morning, Your Honors. May it please the Court, Counsel, My name is Joanna Christensen. I represent the appellant, Carey Ray, in this case. The district court erroneously instructed the jury in this case by eliminating two of the elements of the charged Illinois state offenses. The court failed to impose or failed to instruct the jury as to the two defenses that become elements of the Illinois charges when the evidence supports such an element. Subsection D would require a fourth element, that statutory rape, that Mr. Ray did not reasonably believe Alexia was 17 years or older. That's people versus lemons. And subsection C1, the sexual abuse charge should have been the fourth element that Alexia did not consent to the sexual conduct. The government, by alleging these crimes in the indictment, was required to prove one or both of those crimes occurred. Therefore, the court was required to instruct the jury as to those state crimes. The court's instruction did not include all of the elements under Illinois law and did not follow the Illinois pattern jury instructions. This error clearly confused the jury, who had questions only about that instruction, even though instruction 20 mentioned the defenses, it mentioned them as defenses, not as elements of the offense as required by Illinois law. This error was a grave error as held by Illinois Supreme Court and necessitates a new trial in this case. Harmless error cannot change this outcome in this case because the government failed to prove these elements beyond a reasonable doubt and the element of intent to cross state lines for sexual activities. Yeah, isn't this a different sort of a crime, though? The government doesn't have to prove the two state offenses. The government only has to prove that your client traveled in interstate commerce with intent to commit those offenses. So it's in a little different posture, I think, an importantly different posture than if this case were being tried in the Illinois courts. I agree. It's an affirmative violation of the statutory rape and the rape or sexual contact by use of force statutes. Right. It is in a different posture than the Illinois cases. However, this court held MANAVA that where the government charges state cases, the government must, or state offenses, the government must prove those offenses as part of. If Mr. Ray had the intent to commit those offenses, the government has to prove all the elements of those offenses that he intended to commit them. Not just some of the elements, but all of the elements. And we assert that not only was the jury misinstructed on that issue, but the government also did not prove all of those elements in this case. So we're relying on MANAVA. I think that's how one says it. MANAVA for that proposition, which was a travel act case, I believe, that held the government that proved Indiana or that charged Indiana offenses had to prove the elements of the Indiana offense as part of the charge different offenses. But whatever they choose to charge as part of this offense has to be proven beyond a reasonable doubt, and the jury has to be instructed accordingly. Regarding the harmless error issue, particularly, I'm not the harmless error, the sufficiency evidence, particularly the intent was not formed prior to crossing state lines. This court's not really reached that issue, but the Broxmire court did, said that the actus reus in the mens rea must occur at the same time and that actus reus is crossing the state lines. The government did not prove that Mr. Ray had the intent to engage in sexual activity or any of the Illinois offenses at the time the state line was crossed. The government also failed to prove the force element and failed to prove the lack of consent. The government argues that those are two sides of the same coin. They are, however, two different elements of the Illinois offenses. The government proved neither of them. And finally, the government did not prove the reasonable belief that Alexia was over 17. She herself was representing herself to be 20, 21, and told Mr. Ray that she was first 20 or 21, then 17. The only evidence toward that was Alexia said that she assumed her mother had Mr. Ray was I can't come assuming Alexia's identity. Alexia said the evidence was that he admitted to his cousin that he knew she was 14. That was part of the evidence. The testimony was equivocal on that because Mr. Weddington said that Kerry told him he found out later that she was 14. And the evidence was back and forth about when that later was, whether it was later as in later the first meeting, but before the second, right, or later as in after the sexual encounter. And that, of course, is relevant in this case. I will talk briefly about sentencing, then I'd like to move on to the jurisdictional issue as well. The bottom line with these sentencing issues is the district court failed to make any findings about the cross reference, the enhancement and the mitigation factors. This was all argued in front of the district court as mitigation, that the cross reference and enhancement were too harsh for the offense. And the district court simply made stock findings about the 3553A factors and failed to make findings about the mitigation. That alone should mean that this case is reversed, should be reversed and remanded for resentencing. Finally, this case comes to this court in another issue as well, and that's the jurisdictional issue, which was briefed in our second brief. And we maintain, as we have the entire time, that the district court did not have jurisdiction to modify the judgment that was currently under appeal under 3583E2, and for various reasons. Primarily, the question of may the court do it, timeliness at any time is different from the authority to act. 3583E2 does say at any time. That does not necessarily mean the court has authority at that time to modify the judgment, particularly where the judgment is on appeal and the modification addresses exactly the issues that have been fully briefed by at least one party in this case. But we've held to the contrary in Yes, and Raymer and Taylor have both held to the contrary, and I believe they're both distinguishable for various reasons. In both those cases, the defendants either requested or agreed to the modification. Mr. Ray did not, and the Raymer and Taylor courts... What does that have to do with jurisdiction? It doesn't have anything to do with jurisdiction. It certainly has something to do with whether Raymer and Taylor are applicable in this situation. The jurisdictional issue wasn't... They're jurisdictional decisions. I completely understand a request to overrule them. I don't see how you can say, well, it depends on who asked in the district court. That just has nothing to do with jurisdiction. It does not have anything to do with jurisdiction, but it does have to do with why Raymer and Taylor wrongly decided. Jurisdiction was not briefed in those cases, and it was not considered fully by the panels. I know it's unusual for this court to overturn decisions that this court has made within the last year, but the reasons for that are plenty. It also did not discuss any of the jurisdictional issues that we have raised. It did not discuss the Cusse case, preserving judicial resources. It did not request or it did not distinguish between issues that are actually briefed on appeal versus issues that can be modified in the district court that had nothing to do with the appeal. Essentially, what happened is the government saw the brief that I had filed and found a way to change the record after I had filed the brief. And this is an issue, is the reason we have the jurisdictional rules. So we all are on the same playing court when we brief cases. So this court is on the same field as I am, as the government is. The district court can't change the playing field midstream. I'm mixing my metaphors at this point. But I think you get the point, is that in our system of justice, the way this works is there's a record that comes up to this court, and the parties brief it. This court makes a decision, and then the parties follow whatever happens. The district court has to modify something, it modifies something. If it's affirmed, it's affirmed. Well, as an original matter, then, what does the phrase, at any time in 3583.2 mean? That means the court may do it at any time. The question of jurisdiction is a separate issue. I don't believe that Congress was intending to confer special jurisdiction to the district court if another court had jurisdiction at the time. And you get that from what language in the statute? In the statute, no. Certainly, it's not in the statute. Cases interpreting the statute, the government makes much hay about that this is a judicially created rule, as are many of the rules that we live under are judicially created rules. But there are reasons for those judicially created rules. And it is so two courts do not exercise jurisdiction at the same time over the same issues, and with one court changing those issues. There is a method to do that, which is under Rules 12.1 and Circuit Rule 57. And 57 said, if the district court wishes to change anything under any rule, it should ask, it should indicate whether it's going to do it, and then tell the Court of Appeals that that's what's going to happen. And the Court of Appeals can either send it back or send jurisdiction back. So there are ways to deal with it that are appropriate that don't change the playing field at the time that we're briefing a case. That's the generally applicable rule. This one is specific to this situation, and usually the more specific controls. I think that Rule 57 certainly includes that because it says, or any other rule. I think it's intended to cover all rules, including subsection E2 of 3583. Well, this is a statute, not a rule. Sure. Sure. But again, it goes back to any time as a timeliness issue, is when you can do it, rather than giving 30 days, 60 days within a year. It says at any time. I will also point out that aside from jurisdiction, that the district court did not follow 3583 or any of the rules that it would require to follow when modifying the judgment and the conditions of supervised release. So certainly, even if the district court had jurisdiction to do what it did, it did not do it properly and amend and follow the rules 3553, 3583, and Rules 32 as far as having a hearing. And it also deprived Mr. Ray of the full resentencing that's been ordered in nearly every case on these supervised release issues under CAPAS. So I see that I'm in my rebuttal time, and I certainly want to give the government a chance to respond. Thank you, Mr. Christian. Thank you. Mr. Holler. Thank you. Good morning, Your Honors, and may it please the Court. Dealing with the issues in the order, I guess, from the briefs, at least with the ones that have been raised in this brief, there was more than sufficient evidence for the jury to find that Mr. Ray's intent, when he took Alexia across state lines, was to engage in criminal sexual activity. There's more than enough evidence for the jury to find that. I'd like to respond specifically to Ms. Christensen's claim that there wasn't sufficient evidence on the statutory rape point. Mr. Weddington himself testified, this is on page 55 of the Volume 1 of the trial transcript, did you ask him, did you ask Ray if he knew she was 14 before he had sex with her? Yes. How did he answer? He said yes. And again, on page 62, reciting his grand jury testimony, which of course is substantive evidence as well, I said, did you do anything with her when she told you how old she was? He said, yes, he did. I said, what did you all do? He told me they had just said he didn't know why he did it. He just said he did it. So that evidence alone is enough evidence, even without Alexia's evidence. And Alexia's evidence as well was essentially that she told him she was 14, I think only because she thought her mother had already told him that she was 14, which actually was not true. Her mother hadn't said that. But she does say, I guess I was like, I'm sorry, I'm really 14. And how did he respond when you told him you were 14? He was cool with it. He said, just don't tell nobody. That's volume two, page 51. So again, she doesn't remember exactly what she said, but she does remember that he was cool with the fact that she was 14. So there's more than sufficient evidence that he knew she was 14. There's more than sufficient evidence based as well on the comments, you know, I paid for this room. I'm going to get what I want. The prior discussions about the fact that he wanted to have sex with that he did intend, especially in light of the Bonte decision to engage in forced sexual activity and that at a minimum he intended to commit statutory rape. Turning to the instructional question, your honors, the government and the district court, more accurately, the district court through its jury instructions did not eliminate the Illinois defenses or the Illinois elements regarding force and mistake of age. There is no requirement that the pattern instructions be followed. This was not a case where we were trying the Illinois offenses in federal court. This was a case where the Illinois offenses do get incorporated in part because of the way that the statute is written. The defendant had to have intended or have had his dominant purpose in crossing the state line to be the illegal sexual activity. That's courts instructions 21. The government needed to show that the dominant purpose of the defendant's interstate travel was to engage in sexual conduct with Alexia. If you read through the instructions, it does incorporate all of those defenses and all of the elements that are being complained about. In instruction number 17, it lists the three elements from this court's pattern that are at issue in the federal offense. Two of them that somebody was transported in and that person was a minor were essentially conceded. Then the next five to six instructions all deal with the third element. Did he intend to engage in sexual activity, which if it had occurred or did occur, the defendant could be charged with the criminal offense of aggravated criminal sexual abuse. It sets forth what those statutes are, and it sets forth further definitions, further explanations. One of those explanations is in instruction 20. What instruction 20 says is it does label them as defenses. There are defenses in federal and state law on which the defendant has the burden of proof. There are defenses on which the government retains the burden of proof to disprove. Jurors don't normally walk into courtrooms knowing what a defense is or what an element or frankly even what a burden of proof is. They're instructed on it. What they were instructed here, if one reads parts of instructions 20, is if the defendant reasonably believed Alexia was 17 or older, then he lacked the intent necessary to engage in conduct that would or did violate the statute, which is necessary for the defendant to prove his reasonable belief in Alexia's age or that she consented. Rather, the government must prove the defendant acted with the intent to violate Illinois law as charged in the indictment. So if one reads all of that, if the burden is on the government to prove intent, if the defendant reasonably believed Alexia was 17 or older, he didn't have any intent. And that was all explained in the instructions. It was also all argued to the jury. I think through the instructions and the argument, the jury was well aware. I don't think that there even if Mr. Ray genuinely thought that Alexia was 17. The defense centered on the age issue and knowledge of age and also the force issue, as I understand it. Is that right? I think that's correct. I mean, reading the closing argument, I think it was a bit of a scattershot approach, Your Honor. I mean, there was certainly, I mean, I think there was an argument that you didn't necessarily even know that the sex occurred in Illinois. So there were a whole arguments were, you know, maybe Weddington has a beef. He didn't know. No one would know. The girl was trying to pretend that she was older. And on the force, she wasn't credible that this wasn't forced. I think those were the arguments. So yes, this was all teed up. This was all very clear to the jury as to what they were supposed to find. The instructions adequately, I mean, the burden is just did the district court abuse its discretion in giving the instructions? There's no requirement that pattern instructions could be given. I think we can always look at instructions later on after the issues have been fully framed in our up on appeal and say, I could have written this a little better or that a little better. But on the standard here, which is did the district court abuse its discretion and did the instructions misguide the jury to its prejudice, which is the standard in this case, there's no possibility that the defendant should prevail. These instructions adequately stated those offenses. Would you say it's best practices for district courts to use the state pattern instructions when the charge is embedded or the intent to commit the state crime is embedded in the federal crime? You know, that's an interesting question. I mean, I do think that the district court was concerned that, you know, that you don't really want to instruct on an offense that isn't really the offense. The focus here is on the intent. And I think that was the district court's goal, was to try to really get the jury to look at what mattered. What matters is his intent. Here's how these things play into the intent. As it was, you know, the jury was asking questions like, well, we see this, is this a separate offense? Do we have to check a box to mark this offense? And I think the district court was concerned that he didn't want the jury so focused on focusing on that. I mean, that really could have been to the defendant's detriment if the jury said, well, we're sure that this happened and didn't think about the fact that the intent had to be performed before. I mean, you know, so I don't, I think it would depend on the facts of the specific case. I mean, I suppose in general, the district court would probably not have gone wrong by following the pattern instructions here, but I do think that that was the district court's concern. There are certain situations and there are cases, of if the offense here had not been consummated, the mere fact that those elements hadn't been ticked off would not matter. And the reality, you know, would be if a defendant crossed state lines intending to force someone to have sex and then the defendant consented without the force being used, that would still be a violation of federal offense. It would be hard to prove, but it would still be an offense. And that was, I think, the district court's concern is, if we overly focus on the patterns and wed ourselves to the patterns, we're not really focusing on the actual 24-23 charge here. I would, I think I would basically stand on our brief on the guidelines issues and the district court's explanation issue, unless the court has questions, because I'm quite certain the court has questions on the supervised release matters. But, you know, the guidelines, I think, were properly followed here. His CARA eliminates the double-counting argument, and there was sufficient evidence from which the jury could, or from which the district court could find a force. As far as the explanation goes, I, I, we have admitted in our brief the findings were minimal, but on stock issues when imposing guideline sentences, the court has long said for years and years, the court does not need to say much. And as vigorously as this case was fought at trial, only stock issues were raised at sentencing, so. There was practically a waiver of that argument too. As I read the sentencing transcript, the judge, after he was sort of done saying what he had considered, asked the defendant personally, as well as counsel, whether there was anything else or whether he had covered everything. Right. Essentially, and the answer was, yes, he had covered everything. Yes, and, and I mean, yes, if the defendant had said, no, I think you didn't address sufficiently why, you know, my sparse work history or my criminal history that only consists of reckless driving is enough, you know, then the, I'm sure that the district court would have been more than happy to spell that out more, but I don't think that there's anything here that would justify reversal of that. So we come to the supervised release, release issues, your honors. The court is now being asked for the fourth time, I guess, to consider the question of whether Raymer and Taylor are correct, whether the court should instead overrule those decisions and create a circuit split with the first circuit. I think that the issues are reasonably well teed up. I do agree that it can't make any difference that it was in Raymer and Taylor. It was the defendant that moved in here. It was the government that moved. Griggs is a judge-made doctrine and statutes can overrule that. I think the Dolan case, you know, there's, there's a fairly vigorous dispute about this, about how exactly do we interpret the restitution statute, where it says you get 90 days afterwards to appeal and, or excuse me, to fix and finalize the amount of restitution. And of course, the dissent in that case seemed to suggest, well, you know, you can't be doing anything in the district court while the case is on appeal. So this must mean we have to wait 90 days before there's a final judgment. And the, the, the majority opinion says, no, no, that's not true. In fact, this happens all the time. District courts can, you know, issue a judgment and then have an issue that's sort of still pending and still in reserve. And then what happens is we consolidate those issues on appeal. And that's, that's what has happened here. There's a, there's supervised release issues that are being taken care of and then those become consolidated and those become briefed and issued on appeal. I mean, do consolidating, does consolidated briefing present greater challenges for this court than a standard single-track appeal? I'm, I'm certain that it does, but at the same time, that is something that this court can and, and certainly does on a regular basis deal with in the restitution context. As to why Congress would want this, I think that DeMario explains that and I think that this court's decisions explain that as well. Since supervised release is often, as it was in Taylor, as it was in DeMario, something that is ongoing in the district court. There are ongoing supervised release issues when defendants are on supervision that need to be dealt with. And Neal, the court's more recent decision, points out, you know, you can modify these at any time. You don't have to wait until the defendant starts supervised release to suggest that there are changes in situations where these things need to be modified. So there is a normal default rule, it's a good default rule, that says we don't do this. But there are exceptions and there are reasons for doing this. Now this court has sort of revolutionized, revolutionized supervised release practice in this circuit. And it's an ongoing fight that, that we're having as we have cases coming back two, three, four times as we continually revisit these conditions. I think the court needs to think about what the best remedies are for doing that. Now, now again, another thing to point out is if the district court wants to engage in a full resentencing, all the district court has to do is say no. We moved in, all at once really, we moved in three cases in the district court to do this after Raymond and Taylor said it was okay. Some where the briefs had been filed, some where they hadn't. Two of the judges modified the conditions. One is Miller, which was recently affirmed by this court. One is this case. Third case, you're not going to see in that posture because this court said, no, I might want to resentence the defendant. I don't know what I want to do. And so we then dutifully moved for a remand. It got remanded, the district court resentenced. Didn't actually change the sentence, but that's what happened in that case. So the district court always has the power. I mean, I think that Ms. Christensen is right. The district court always has the power and has the discretion to say, you know, I'm not going to act. I am going to wait for the court of appeals. This court dealt with the circuit rule 57 question in Taylor and said, you know, we interpret circuit rule 57 in tandem with rule 12.1 of the federal rules. Federal rule 12.1 says essentially those rules only apply when the district court doesn't have jurisdiction and wants to do something. And so in those instances, that's sort of where we are at. Now, I mean, if this presented problems in future cases, certainly this court could modify circuit rule 57 and could add a 57B that dealt with this kind of situation if it felt it needed more notice or it felt it wanted to have these kinds of situations resolved. But I mean, I think our view was that this was an opportunity in some respects to try to get some kind of agreement and the full analysis and the full review that this court has done in case after case in the supervised release context. We do not believe that the district court abused its discretion and its decision to modify any of those conditions. And indeed, you know, the defendants argue that... What do you think about the effect of McHugh? I think, Your Honor, that McHugh does suggest that, well, McHugh's been interpreted in several different ways by this court. McHugh did The holding of McHugh is that the phrase, quote, at any time in criminal rule 36 does not allow the district judge to proceed while the court of appeals is proceeding. The Raymer says that the phrase at any time in a statute does allow the district court to proceed while the court of appeals is proceeding. As the concurring opinion in Taylor pointed out, the phrase at any time appears at least 35 times in the criminal and civil rules. If there's a special jurisdictional doctrine that comes with the phrase at any time, don't we have a conflict within the circuit and a potential problem for the 35 some odd times this phrase appears in the rules? I think, Your Honor, that to the extent that McHugh says that, and McHugh points out that it is indicted because in that particular case, the rule that it was analyzing, Rule 36, the court found, did not apply. Rule 36 did not apply, but they were never going to state how it stated. I do think that is not consistent with Dolan. I think that Dolan says that the majority in Dolan says, essentially, we believe you can do this. The district court can act on restitution in the district court while the case is pending. And the dissent says, we disagree with that, but in the opening, the reason they say they disagree with that is because the statute doesn't, they read the statute to say, you can modify restitution at any time. And does appear, even in the dissent, to suggest that at any time has some sort of jurisdictional significance that could overrule the judge-made doctrine. So I would say that that would be how I would distinguish McHugh. I wouldn't sound like a ground of distinguishing McHugh. It sounds like you're asking us to overrule McHugh. The problem I'm raising is, among whatever else can be said, we seem to have an intracircuit conflict. And normally, it's a good idea to clear that up. Well, I think we've offered the reasons in our brief why we do not believe there is an intracircuit conflict. To the extent that this court believes there is an intracircuit conflict, we would suggest that in light of McGee, in light of DeMario, in light of Raymer, in light of Taylor, and in light of Dolan, that to the extent there's a split, the decision that should be overruled is McHugh and not Raymer, Taylor, and Neal. Like I've said, I think we do believe, for the reasons I've stated, that McHugh can be distinguishable. But to the extent not, then it should be overruled. And in addition to overruling McHugh, at that point, then there would be no reason to do anything other than affirm the judgment in this case. Thank you. Thank you, Mr. Haller. Ms. Christensen. I'll start with the supervised release issues and work backwards. I will say the government said the court's changed landscape in this circuit. The court has changed the landscape about supervised release nationally. The ARO has changed the standard conditions for the entire country. It's in the process of changing all of the special conditions. So whatever this court does will be looked at in other circuits when these issues start to trickle down. It's an important issue for various reasons, and Dolan does not control. Dolan is the restitution statute which specifically leaves open an issue in the district court for determination later. It specifically says you can leave it open, and the district court in Dolan said, I'm leaving this open. I'm going to make a decision in this many times. It did actually take longer than the 90 days. The court said that was fine. But when it goes up to the Court of Appeals, the Court of Appeals knew that issue was still pending, and knew that another appeal would likely follow unless the defendant got everything he wanted. In this case, it's completely different. These issues were settled by the district court, decided. It came up here. A brief was filed. That's the reason. Now that's not the only reason to change Raymer and Kehler, but that's the reason why it matters practically for this court and practically for litigants about how to approach an appeal, how to argue an appeal, how to write a brief. It approaches those issues. And I will disagree that that restitution issue does not come up very often in this court. It does come up occasionally, but certainly not with any regularity, and certainly not with the regularity that this issue is coming up. There will be a point where this issue probably goes away, but it is still coming up. Unless the court has questions about the jurisdictional issue, I'm going to talk a little bit about the instruction. The instructions absolutely misled the jury. I'm not trying to say that the Illinois offense should have been charged as the offense in this case. This was a 24-23 offense. That instruction was fine. We have no problems with that instruction. But when the government alleges an Illinois offense and the district court instructs the jury on that offense, the instruction has to include all the elements of that offense. And the Illinois law is clear. Those two fourth elements, I'm calling them, become elements of the offense when the evidence supports them. So the instruction must read those four elements of the offense under subsection C1 and subsection D. The district court eliminated those elements. And while they were in a defense's jury instruction, I will say that any juror, layperson that comes into the room, will look at an instruction that is titled defenses and think defendant. Because the layperson's understanding of the word defenses is something that the defendant has to prove. So when you have something labeled defenses, it automatically shifts the burden in the jury's mind to the defendant. And that was error in this case. Unless the court has questions, I will ask that the court either reverse and remand for new trial or for resentencing. Thank you. Thank you, Ms. Christian. Thanks to both counsel. Case taken under advice.